In re Direct Contempt of Gus CAITO Concerning His Failure to Answer Questions Before the Grand Jury of the Hamilton Court.

No. 883S291.

Supreme Court of Indiana.

Feb. 29, 1984.

Rehearing Denied April 19, 1984.

Alex R. Voils, Jr., Owen M. Mullin, James Clark, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION ON CRIMINAL PETITION TO TRANSFER

GIVAN, Chief Justice.

Appellant brings this petition pursuant to Appellate Rule 4(A)(10) seeking a review of

the Hamilton Circuit Court's finding him in direct contempt, and to challenge the constitutionality of Indiana's Grand Jury Use Immunity statute, IC § 35–34–2–8 [Burns Supp.1983], as it applies to target witnesses.

Appellant was subpoenaed as a target witness before the Hamilton County Grand Jury in the matter of the investigation of the death of Delvoyd Baker. Appellant complied with the subpoena. However, upon his attorney's advice, he refused to testify after being sworn, except to identify himself. He took the position that such answers might tend to incriminate him. The State then invoked the provisions of the following statutes pertaining to grand jury proceedings:

"35–34–2–6. Motion to quash subpoena—Rights of target—Use immunity.—(a) Any witness may file a motion to quash a subpoena duces tecum directed to that witness. The motion must include a statement of the facts and grounds in support of the objection to the subpoena. The court shall:

"(1) Promptly conduct a hearing on the motion; and

"(2) At the conclusion of the hearing, enter findings in support of its ruling.

(b) A target who is subpoenaed may move to quash a subpoena based upon his privilege against self-incrimination. The court shall grant the motion, unless the prosecuting attorney makes a written request that the target be granted use immunity in accordance with section 8[35–34–2–8] of this chapter. Upon request by the prosecuting attorney, the court shall grant use immunity to the target and order him to comply with the subpoena. [IC 35–34–2–6, as added by Acts 1981, P.L. 298, § 3.]"

"35–34–2–8. Grants of use immunity—Refusal to give evidence after immunity granted.—(a) Upon request by the prosecuting attorney, the court shall grant use immunity to a witness before the grand jury. The court shall instruct the witness by written order or in open court that any evidence the witness gives before the grand jury, or evidence derived from that evidence, may not be used in any criminal prosecution against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the grand jury or the prosecutor. The court shall then instruct the witness that he must answer the questions asked and produce the items requested.

(b) A grant of use immunity does not prohibit the use of evidence the witness gives in a prosecution for perjury under IC 35–44–2–1.

(c) If a witness refuses to give evidence after he has been granted use immunity, he shall be brought before the court and the court shall proceed as if the witness had refused in open court. [IC 35–34–2–8, as added by Acts 1981, P.L. 298, § 3.]"

The State moved the court to grant use immunity to appellant "in accordance with I.C. 35–34–2–8," and to order him to answer a list of written questions. The court granted the State's motion and ordered appellant to answer a list of written interrogatories attached to the order. Appellant was again presented to the grand jury, and he once again refused to testify, claiming his privilege against self-incrimination. U.S. CONST. amend. V; IND. CONST. art. 1, § 14.

The trial judge found appellant in direct contempt of court pursuant to statute:

"35–34–2–7. Refusal of witness to answer questions or produce items—Procedures.—(a) If a witness before the grand jury refuses to answer any question or produce any item, the prosecutor may inform the court, in writing, of the question asked or item sought and the reason given for the refusal. The court shall, after a hearing, decide whether the witness is required to answer the question or produce the item and the witness shall be informed immediately of the court's decision.

(b) If the court determines that the witness must answer the question or produce the item and the witness continues

to refuse, he shall be brought before the court and the court shall proceed as if the witness had refused in open court.

(c) If the court determines that the witness may properly refuse to answer a question or produce an item based upon his privilege against self-incrimination, the prosecutor may request the court to grant use immunity to the witness under section 8 [35–34–2–8] of this chapter. [IC 35–34–2–7, as added by Acts 1981, P.L. 298, § 3.]"

"34–3–7–2 [3–903]. Direct—Refusing to testify—Demeanor on witness stand. —Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; or who, being required by any court to be sworn in any such trial or proceeding, shall refuse to take an oath or affirmation therein; or who, while upon the witness stand, shall purposely so demean himself, as to retard or disturb the proceeding thereof, shall be deemed guilty of a direct contempt thereof. [Acts 1879 (Spec.Sess.), ch. 35, § 2, p. 112.]"

The trial judge fined appellant five hundred dollars ($500), and ordered that he be held in the Hamilton County Jail for sixty (60) days or until he presented himself to the court and advised that he would testify before the grand jury as ordered. The court stayed the contempt sanctions pending this appeal.

■ Appellant first argues the evidence is insufficient to support the court's finding of direct contempt. He concedes our standard of reviewing direct contempt proceedings requires this Court to accept as true the statement entered of record by the lower court of the matter constituting the contempt, and to interfere with the judgment only where it clearly appears alleged acts do not constitute contemptuous acts. *Grimm v. State*, (1959) 240 Ind. 125, 162 N.E.2d 454; *Russell v. State*, (1979) Ind. App., 428 N.E.2d 1271.

■ Under the statutes, if a grand jury witness refuses to testify invoking his privilege against self-incrimination, the trial judge may grant use immunity and derivative use immunity to the witness. The witness may then be compelled to testify, and if he refuses he may be found in contempt. This is precisely what occurred in the case at bar. Therefore, appellant's acts of refusing to answer questions at the grand jury proceedings do indeed constitute direct contempt.

■ Appellant next challenges the constitutionality of the statute as applied to target witnesses. Our constitutions protect those accused of crimes from being compelled to testify against themselves. The privilege against self-incrimination is one of the most fundamental of our constitutional rights and has been jealously guarded by the judiciary. However, the privilege is not absolute, but must be balanced against the government's legitimate demands to compel citizens to testify so that, in order to effect justice, the truth surrounding the criminal incident may be discovered. *Lefkowitz v. Turley*, (1973) 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274; *In Re Contempt Findings Against Schultz*, (1981) Ind.App., 428 N.E.2d 1284. The balance between the imperatives of the privilege and the government's interest is achieved by granting witness immunity to those who are forced to testify against themselves. An immunity statute will be upheld where the immunity granted is coextensive with the scope of the privilege. *Kastigar v. United States*, (1972) 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. The witness must be left in substantially the same position as if he had properly exercised his privilege to remain silent.

Appellant claims Indiana's statute does not leave a target witness in such a position, and is therefore unconstitutional as applied in his case. He contends that the statute provides for, and the trial court granted, use immunity alone in exchange for the compelled testimony of the target.

■ Three types of immunity may be granted a witness in exchange for his testimony: (1) *transactional immunity:* which prohibits the State from criminally prose-

cuting the witness for any transaction concerning that to which the witness testifies; (2) *use immunity:* where the testimony compelled of the witness may not be used at a subsequent criminal proceeding; and (3) *derivative use immunity:* whereby any evidence obtained as a result of the witness' compelled testimony may not be admitted against him in a subsequent criminal prosecution. *Kastigar, supra; In Re Schultz, supra.*

■ Conferring transactional immunity upon a witness is undoubtedly coextensive with his Fifth Amendment privilege since the compelled testimony can never be used against the witness in any criminal proceedings. This type of immunity grants the same degree of protection to a citizen ordered to testify as though he had not testified at all. *Kastigar, supra; Katz v. United States,* (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *Reina v. United States,* (1960) 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249; *Brown v. United States,* (1959) 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (overruled on other grounds); *see Harris v. United States,* (1965) 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240.

■ The grant of use immunity alone cannot give a witness protection equivalent to the Fifth Amendment privilege. The shortcoming of use immunity is that, although the compelled testimony cannot be admitted against the witness in a subsequent prosecution, other evidence derived from that testimony can. Use immunity *per se* cannot protect an individual's right not to give evidence against himself because the compelled testimony may still be employed by investigators who have thereby gained a knowledge of the details of the crime and other sources of incriminating evidence. As appellant in the case at bar argues, use immunity cannot alone provide protection coextensive with the Fifth Amendment right because the witness would have done less damage to his defense through claiming the privilege, than by testifying with immunity. *Lefkowitz, supra; Kastigar, supra.*

Appellant correctly contends that use immunity by itself is an inadequate substitute for the Fifth Amendment protection. However, he evidently misreads our statute, and the trial court's order. IC § 35-34-2-8 specifically states "any evidence the witness gives before the grand jury, or evidence derived from that evidence, may not be used in any criminal prosecution against that witness...." The United States Supreme Court has decided that statutes which compel the testimony of target witnesses in exchange for both use immunity and derivative use immunity are constitutional, *Kastigar, supra,* even when they allow subsequent perjury prosecutions arising from false immunized testimony. *United States v. Apfelbaum,* (1980) 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250.

The situation before the Supreme Court in *Kastigar* was the same as the one now before this Court in the case at bar. The petitioners therein were summoned before a United States grand jury and refused to testify, after being granted immunity under 18 U.S.C. §§ 6002-6003, asserting the immunity was not coextensive with their privilege against self-incrimination. The District Court held them in contempt and committed the petitioners to the custody of the Attorney General until either they responded to the grand jury's questions or the term of the grand jury expired. The Ninth Circuit Court of Appeals affirmed. The Supreme Court also affirmed the judgment saying:

"We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one

who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being 'forced to give testimony leading to the infliction of "penalties affixed to ... criminal acts." ' Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Kastigar, supra,* 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222.

The Supreme Court also stated "immunity from use and derivative use 'leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege' in the absence of a grant of immunity." *Id.* at 458–59, 92 S.Ct. at 1664, 32 L.Ed.2d at 225; *quoting Murphy v. Waterfront Commission of New York,* (1964) 378 U.S. 52, 79, 84 S.Ct. 1594, 1610, 12 L.Ed.2d 678, 695.

█ Based on the above authority, we find IC § 35–34–2–8 does not violate the Fifth Amendment of the United States Constitution, nor Art. I, § 14 of the Indiana Constitution. Although the grant of use immunity and derivative use immunity is not impervious to abuse by prosecutorial staffs and investigators, the *Kastigar* court intimated such potential misuse has been foreseen and adequately curbed by the directives of *Murphy, supra,* 378 U.S. at 79 N. 18, 84 S.Ct. at 1609, 12 L.Ed.2d at 695. Quoting *Murphy,* the *Kastigar* court stated:

"Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence." *Kastigar, supra,* at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226.

The *Kastigar* court went on to state: "This burden of proof which we affirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* Notwithstanding the fact that appellant might have fared better had he testified under the immunity granted, and thus placed this heavy duty of proof upon the State at any later prosecution to show that the evidence presented against him had an independent source, we find appellant chose the more certain route to penalty of contempt.

The trial court is in all things affirmed.

All Justices concur.