In re the Contempt Hearing of Woodrow S. NASSER.

No. 11S04–9412–CR–1190.

Supreme Court of Indiana.

Dec. 8, 1994.

Gerald H. McGlone, McGlone Law Offices, Terre Haute, for appellant.

Norman T. Funk, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, for appellee.

SHEPARD, Chief Justice.

After a hearing on the merits, a special judge found appellant Woodrow S. Nasser in direct contempt of court. The judge ordered him to reimburse Clay County $343 and to perform one hundred hours of community service.

Nasser appealed, and the Court of Appeals affirmed. *In re Nasser* (1994), Ind.App., 627 N.E.2d 1338. He then filed a petition for transfer with this Court.

Nasser raises four issues in support of his appeal from this sentence which we consolidate as follows: Whether the evidence supports the finding of direct contempt. We conclude that sufficient evidence supported the special judge's finding and affirm.

### I. The Trial Is on Monday

The statement entered of record by the special judge reveals that in August 1992, Nasser was retained as private counsel by a man charged with five counts of child molesting. Judge Ernest E. Yelton of the Clay Circuit Court set the case for trial on Monday, October 19, 1992. In September, Nasser met with his client on one occasion. During this meeting, he did not discuss either the specific evidence or the merits of the case with the accused. He made no other attempts to meet with his client.

Nasser subsequently failed to serve the State properly with any pleading related to the case. He did not provide adequate notice of his appearance, nor did he effectively serve any discovery request. The State discovered Nasser's appearance in the case only five days prior to trial. The prosecuting attorney contacted Nasser, who said he was unprepared for trial and would be requesting a continuance from the court. Nasser drafted a motion for continuance and mailed it to the court on the Thursday before trial. He did not telephone the clerk of the court to verify receipt of the motion, nor did he seek oral permission for a continuance from Judge Yelton. He just mailed it.

On Monday, October 19, Judge Yelton assembled the jurors, cleared the court's calendar and made the necessary physical preparations for trial as scheduled. At 9 a.m., the prosecuting attorney, the jurors, the witnesses, the accused, and Judge Yelton were present in the courtroom and prepared to begin the trial. Nasser was not present, however, and the court had received no explanation for his absence.

Judge Yelton instructed his staff to contact Nasser, but their efforts were to no avail. He then issued a subpoena for the Clay County Sheriff's office to serve on Nasser to compel his appearance. When Monday's mail arrived at approximately 9:41 a.m., the court received Nasser's motion for continuance. In response to the subpoena, Nasser finally appeared at the court at 10:44 a.m. He apologized and told Judge Yelton that he was involved in a trial in another court and had assumed his motion for continuance had postponed the trial. Nasser confessed he was completely unprepared for trial, as he had not begun discovery and had met with his client on only one occasion. Judge Yelton filed an affidavit citing Nasser for indirect contempt, Ind.Code Ann. § 34–4–7–3 (West 1983 & Supp.1994), disqualified himself and certified the same to this Court.

We appointed a special judge to preside over Nasser's contempt proceeding, which was heard in December 1992. Upon a motion by the State, Special Judge Grey amended Judge Yelton's affidavit, adding a charge of direct contempt. Ind.Code Ann. § 34–4–7–1 (West Supp.1994). Judge Grey found Nasser guilty of direct contempt and ordered him to reimburse Clay County for the expenses associated with empaneling the jurors

and to perform one hundred hours of community service. He did not rule on the charge of indirect contempt.

## II. Standard of Review

■ When reviewing a finding of contempt, we accept as true the statement entered by the trial court. This Court will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts. *In re Caito,* Ind., 459 N.E.2d 1179, *cert. denied,* 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13 (1984). Contemptuous acts are those in opposition to a court's authority, justice, and dignity. *Brumbaugh v. State* (1986), Ind., 491 N.E.2d 983, 984. Any act related to a current or pending proceeding that tends to deter the court from the performance of its duties may support a finding of contempt. *Hopping v. State* (1994), Ind., 637 N.E.2d 1294, *cert. denied,* — U.S. ——, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994).

## III. Did Nasser's Conduct Constitute Direct Contempt?

Although this Court has not yet addressed the issue, most jurisdictions hold that an attorney stands in contempt when the attorney fails to appear at a judicial proceeding that he or she is legally required to attend. John E. Theuman, Annotation, Attorney's Failure to Attend Court, or Tardiness, as Contempt, 13 A.L.R.4th 122 (1982 & Supp. 1994); *see, e.g., In re Yengo,* 84 N.J. 111, 417 A.2d 533 (1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981). This derives from every attorney's duty to be present at all times during trial, absent a valid excuse.[1]

■ Courts are sharply divided, however, as to whether such an attorney may be summarily punished for the absence or whether some "due process" is required. In most jurisdictions, the debate centers on whether the contempt was direct or indirect. *Compare Pennsylvania v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980) (direct contempt) *with Illinois v. Mann,* 122 Ill.App.3d 66, 77

Ill.Dec. 474, 460 N.E.2d 778 (1984) (indirect contempt). Direct contempt includes those "actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge." *Hopping,* 637 N.E.2d at 1296. Courts have inherent power to punish summarily acts of direct contempt without formal charges or an evidentiary hearing. *McIntire v. State* (1967), 248 Ind. 142, 223 N.E.2d 347; *see also* Ind. Code Ann. § 34-4-7-7 (West Supp.1994). The purpose of this power is to enable the court to protect itself against "gross violations of decency and decorum." *Brown v. Brown* (1853), 4 Ind. 627. Acts of indirect contempt, on the other hand, are those "which undermine the activities of the court but fail to satisfy one of the other direct contempt requirements." *Hopping,* 637 N.E.2d at 1296. Indirect contempt proceedings require appointment of a special judge and an array of due process protections, including notice and an opportunity to be heard. *See* Ind.Code Ann. §§ 34-4-7-9. 34-4-7-9, 34-4-8-1 (West 1983 & Supp. 1994).

Historically, this Court has held that a party's presence in the courtroom is an element of direct contempt. *State ex rel. Stanton v. Murray* (1952), 231 Ind. 223, 108 N.E.2d 251 (reversing direct contempt conviction for critical newspaper article). When an attorney is tried for failure to appear, a semantical problem arises: whether an attorney may be said to be in the presence of the court if he or she is absent from the courtroom. In 1958, we began to address this problem by observing that direct contempt can occur within the area of the judge's knowledge, not merely within the judge's personal presence. *LaGrange v. State* (1958), 238 Ind. 689, 153 N.E.2d 593. In *Hopping,* we directly held that presence in a judicial hearing is not a necessary element of direct contempt. Justice DeBruler explained:

> [W]here ... the court has firsthand and immediate knowledge of acts demonstrating a clear disregard for its authority which threaten to undermine the integrity of the judicial process and impede the per-

---

1. An attorney plays an integral role in the judicial process and when an attorney fails to appear "the wheels of justice must, necessarily, grind to a halt." *Murphy v. State,* 46 Md.App. 138, 416

A.2d 748, 753 (1980). It is this suspension of the proceedings which intrudes upon the operation and dignity of the court. *Id.*

formance of court work, summary proceedings for direct criminal contempt are available. We do not seek [on review] to ascertain the presence of a formal hearing but merely that the inappropriate behavior bears a close relationship to the court's judicial activities.

*Hopping*, 637 N.E.2d at 1297. *Hopping* thus focuses on two inquires: (1) whether the act stands in disregard of judicial authority, thereby threatening the integrity of the court and impeding its work, and (2) whether the judge possessed personal knowledge of the contemptuous act.[2]

■ Nasser was properly punished for direct contempt. He possessed considerable advance notice of his client's trial and made little effort to be present. The trial judge obtained personal knowledge of the contemptuous act, critical to a finding of direct contempt, when Nasser appeared in court and provided an insufficient explanation for his absence.[3] The judge could have summarily punished Nasser for his contempt. Instead, he accorded Nasser every possible fairness by activating indirect contempt proceedings, including a hearing before a special judge. This was substantially more process than the minimum required for direct contempt.

Nasser also contends that regardless of the law of direct contempt, the evidence presented before the special judge was not sufficient to sustain a finding of direct contempt. Among other things, Nasser contends that his humble demeanor when he finally appeared before the court after being summoned was not disruptive. His "humble" appearance, however, was not the act for which he was held in contempt.

Both the record and the special judge's findings of fact reveal that Nasser purposefully disregarded the court's authority and obstructed its productivity. His offense was particularly egregious in light of his complete disregard for the interests of his client. These factors were considered by the special judge and correctly incorporated in his find-

ings of fact. These facts are sufficient to sustain the direct contempt judgment against Nasser.

### *IV. Conclusion*

We grant the petition to transfer and affirm the trial court.

DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.

SULLIVAN, J., concurs with separate opinion.

### ON PETITION TO TRANSFER

SULLIVAN, Justice, concurring.

While I dissented in *Hopping v. State* (1994), Ind., 637 N.E.2d 1294, I consider it *stare decisis* and controlling of the issue here. Accordingly, I join in the decision in this case.

---

**2.** For example, if an attorney berated a judge in front of the jurors before entering the courtroom, this would clearly disrupt the court proceedings. It would not, however, be considered direct contempt if presence in the courtroom was the determinative factor. Because *knowledge* is the critical issue, such an act can be summarily punished as direct contempt. *See Hopping*, 637 N.E.2d 1294.

**3.** When asked about his absence, Nasser stated that he had knowledge of the trial date and filed a continuance a few days before trial. He admitted, however, that he did not confer with the court to see if the continuance was granted, but unquestioningly assumed he would be excused. (R. 58–59.)