**James BELLAMY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–1011–CR–1214.**

Court of Appeals of Indiana.

July 21, 2011.

Transfer Denied Sept. 28, 2011.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant James Bellamy appeals the trial court's finding that he was in direct criminal contempt. Alternatively, Bellamy argues that the trial court erred in refusing him the opportunity to explain himself. We affirm.

### FACTS AND PROCEDURAL HISTORY[1]

On August 9, 2010, the State charged Bellamy with Class A misdemeanor trespass and Class C misdemeanor unauthorized possession of a license or permit. The trial court conducted an initial hearing, at the conclusion of which it scheduled a pre-trial hearing for August 11, 2010. Bellamy failed to timely appear at the August 11, 2010 pre-trial hearing. The trial court subsequently issued a warrant for Bellamy's arrest. Bellamy was later located and was brought before the trial court. The trial court released Bellamy on his own recognizance after the trial court warned him that he would be found in contempt and taken into custody if he failed to timely appear for future scheduled court proceedings.

Bellamy timely appeared at a September 1, 2010 pre-trial hearing, at the conclusion of which the trial court scheduled his

---

1. We held oral argument in this case on June 15, 2011, at Hooiser Boys State at Trine University. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Hooiser Boys State and Trine University for their fine hospitality.

trial for November 8, 2010. On November 8, 2010, Bellamy again failed to timely appear before the trial court. Bellamy eventually appeared before the trial court fifty-four minutes after his trial was scheduled to begin. In light of his failure to timely appear for trial, the trial court found that Bellamy was in direct contempt of the trial court's previous order and sentenced Bellamy to five days[2] of incarceration in the Marion County Jail. The parties then proceeded to trial, during which the State sought and was granted permission to dismiss the Class A misdemeanor trespass charge. Following the conclusion of the evidence, the trial court found that Bellamy was not guilty of Class C misdemeanor unauthorized possession of a license or permit.

## DISCUSSION AND DECISION

Bellamy contends that the trial court erred in finding him in direct contempt, rather than indirect contempt. Alternatively, Bellamy argues that even if the trial court did not err in finding him in direct contempt, the trial court erred in refusing to allow him to explain the reason for his tardiness to the court.

When reviewing a finding of contempt, we accept as true the statement entered by the trial court. This Court will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts. *In re Caito*, Ind., 459 N.E.2d 1179, *cert. denied*, 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13 (1984). Contemptuous acts are those in opposition to a court's authority, justice, and dignity. *Brumbaugh v. State* (1986), Ind., 491 N.E.2d 983, 984. Any act related to a current or pending proceeding that tends to deter the court

from the performance of its duties may support a finding of contempt. *Hopping v. State* (1994), Ind., 637 N.E.2d 1294, *cert. denied*, 513 U.S. 1017, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994).
*In re Nasser*, 644 N.E.2d 93, 95 (Ind.1994).

### I. Direct Criminal Contempt

The contempt power encompasses a broad and varied group of actions. *Hopping*, 637 N.E.2d at 1296. Citations for civil contempt are intended to be coercive, while those for criminal contempt, as in this case, are meant to be punitive. *Id.* Direct contempt involves actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge. *Id.* Courts have inherent power to punish summarily acts of direct contempt without formal charges or an evidentiary hearing. *Nasser*, 644 N.E.2d at 95. "The purpose of this power is to enable the court to protect itself against gross violations of decency and decorum." *Id.* (quotation omitted). Acts of indirect contempt, on the other hand, are those which undermine the activities of the court but fail to satisfy one of the other direct contempt requirements. *Hopping*, 637 N.E.2d at 1296. "Indirect contempt proceedings require appointment of a special judge and an array of due process protections, including notice and an opportunity to be heard." *Nasser*, 644 N.E.2d at 95.

The power of Indiana courts to summarily punish for direct criminal contempt, while specified by statute, rests upon the common law. It is inherent in the courts. *McIntire v. State* (1967), 248 Ind. 142, 144–45, 223 N.E.2d 347, 348–49. It is essential for a court to be able "[t]o protect itself against gross

---

**2.** At trial, the trial court stated that Bellamy was sentenced to six days of incarceration in the Marion County Jail. However, the court's written order reduced his commitment to five days.

violations of decency and decorum ...” as it pursues justice. *Brown v. Brown* (1853), 4 Ind. 627.... This Court has long recognized that it is not the actual interference with a legal proceeding that is to be prevented, but the undermining of the judicial process.... The concern is for the integrity of courts, not hearings or judges. *Grimm v. State* (1959), 240 Ind. 125, 127–28, 162 N.E.2d 454, 456.

Contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Any* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. *Any* act which manifests a disrespect and defiance of a court may constitute direct criminal contempt. *Brumbaugh v. State* (1986), Ind., 491 N.E.2d 983, 984; *In re Nasser* (1994), Ind.App., 627 N.E.2d 1338, 1340–41.

*Hopping,* 637 N.E.2d at 1296–97 (emphases in original).

In *Hopping,* the Indiana Supreme Court held that "where ... the court has first-hand and immediate knowledge of acts demonstrating a clear disregard for its authority which threaten to undermine the integrity of the judicial process and impede the performance of court work, summary proceedings for direct criminal contempt are available." *Id.* at 1297. The Indiana Supreme Court further held that "[w]e do not seek to ascertain the presence of a formal hearing but merely that the inappropriate behavior bears a close relationship to the court's judicial activities." *Id.* Thus, our review of the trial court's determination that Bellamy acted in direct contempt of court should focus on two inquiries: "(1) whether the act stands in disregard of judicial authority, thereby threatening the integrity of the court and impeding its work, and (2) whether the judge possessed personal knowledge of the contemptuous act." *Nasser,* 644 N.E.2d at 96.

■ Bellamy does not dispute that his acts stood in disregard of judicial authority or that the trial court possessed personal knowledge of his contemptuous act. Rather, Bellamy contends that the trial court erred in finding him in direct criminal contempt following his failure to timely appear before the trial court because of his status as a layperson. In support, Bellamy relies on *Rice v. State,* 874 N.E.2d 988 (Ind.Ct.App.2007) and *Williams v. State ex rel. Harris,* 690 N.E.2d 315 (Ind.Ct.App. 1997), in which this court concluded that a layperson litigant's failure to appear constitutes indirect contempt rather than direct contempt.[3] *Rice,* 874 N.E.2d at 991; *Williams,* 690 N.E.2d at 317–18. Thus, this court concluded that a layperson litigant could not be found in direct contempt for failing to appear for a scheduled court hearing. *Rice,* 874 N.E.2d at 991; *Williams,* 690 N.E.2d at 317–18.

The instant matter, however, is easily distinguishable from *Rice* and *Williams.* While it is undisputed that Bellamy is a layperson, unlike the defendants in *Rice* and *Williams,* Bellamy had been expressly warned after previously failing to timely appear before the trial court that any subsequent failure to timely appear would result in a contempt finding and incarceration. Again, the Indiana Supreme Court has held that "[a]*ny* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding, and [a]*ny* act which manifests a

---

**3.** *Rice* and *Williams* describe a layperson as an individual who is not an attorney. *Rice,* 874 N.E.2d at 991; *Williams,* 690 N.E.2d at 317–18.

disrespect and defiance of a court may constitute direct criminal contempt." *Hopping*, 637 N.E.2d at 1297 (emphases in original). In light of the instant circumstances, we do not believe that Bellamy is immune from punishment for what the trial court determined was disrespectful behavior merely because he is a layperson. Thus, despite his status as a layperson, we conclude that the trial court did not err in finding Bellamy in direct contempt of the trial court. Bellamy's failure to timely appear after receiving an express prior warning from the trial court that such a failure would result in a contempt finding distinguishes the instant matter from *Rice* and *Williams*, and demonstrates the requisite interruption to the scheduled court proceedings and disrespect for the trial court.

## II. Opportunity to Explain Tardiness

■ Alternatively, Bellamy contends that even if the trial court did not err in finding him in direct contempt, the trial court erred in refusing to allow him to explain the reasons for his tardiness to the court. In support, Bellamy relies upon *Davis v. State*, 608 N.E.2d 995 (Ind.Ct. App.1993), in which a panel of this court reversed the trial court's determination that the defendant acted in direct contempt of court, and noted that even if the defendant had been in direct contempt of court, the trial court did not afford him an opportunity to respond in accordance with Indiana Code section 34–4–7–7.[4] 608 N.E.2d at 996.

■ While we agree that the better practice would have been for the trial court to allow Bellamy the opportunity to explain his tardiness, we conclude that, in light of the facts and circumstances sur-

rounding the instant matter, any challenge to the error relating to the trial court's failure to allow Bellamy to explain his tardiness was waived. Bellamy was represented below by counsel, and his counsel neither made an offer to prove nor provided additional argument relating to the reason for Bellamy's tardiness. *See Wilson v. State*, 931 N.E.2d 914, 919 (Ind.Ct.App. 2010) (providing that the failure to raise an objection or challenge an issue at trial results in waiver of the issue on appeal), *trans. denied*. Moreover, any error relating to the trial court's failure to allow Bellamy to explain his tardiness was harmless because, as the record reflects, Bellamy expressed the reasons for his tardiness immediately after the trial court found him in contempt and while he was being escorted from the courtroom. The reasons expressed by Bellamy were largely the same as the excuses Bellamy had given the court upon being questioned about his prior failure to timely appear before the trial court. The trial court would have heard Bellamy's explanations and could have changed its finding that Bellamy was in direct contempt of its prior orders if it was persuaded by Bellamy's explanations.

The judgment of the trial court is affirmed.

BAKER, J., and MAY, J., concur.

---

4. The court's conclusion in *Davis* was based upon its interpretation of Indiana Code section 34–4–7–7, which was subsequently repealed by P.L. 1–1998, Sec. 221, and succeeded by Indiana Code section 34–47–2–4, the relevant portions of which appear substantially the same as its predecessor.