

**FILED**

Jul 16 2019, 8:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Caroline B. Briggs
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Leroy Tunis,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 16, 2019<br><br>Court of Appeals Case No.<br>19A-CR-220<br><br>Appeal from the Tippecanoe Superior Court<br><br>The Honorable Kristen E. McVey, Judge<br><br>Trial Court Cause No.<br>79D05-1812-MC-1392 |

**Bailey, Judge.**

# Case Summary

[1] Michael Leroy Tunis ("Tunis") was found in direct contempt of court after refusing to testify as a witness in the trial of Samuel Jude Clark ("Clark"), despite the trial court's grant of immunity. The trial court sentenced him to 180 days executed in the Tippecanoe County Jail. Tunis appeals the court's finding of contempt and sentence. We affirm.

# Issues

[2] Tunis presents two issues for our review, which we restate as:

> I. Whether the trial court abused its discretion in finding Tunis was in direct contempt of court for refusing to testify after the court granted him use immunity and derivative use immunity under Indiana Code section 35-37-3-3.

> II. Whether Tunis's 180-day sentence was reasonable and not inappropriate.

# Facts and Procedural History

[3] Clark was charged with theft, conspiracy to commit obstruction of justice, obstruction of justice, conspiracy to commit intimidation, and was alleged to be a habitual offender under trial court cause number 79D05-1706-F6-589 ("cause

F6-589").[1]  Tunis was summoned to testify at Clark's trial, set to begin on December 20, 2018.[2]  On December 19, the trial court held a pre-trial hearing to discuss the prosecuting attorney's intent to request the court grant Tunis immunity in exchange for his trial testimony.  During the hearing, the court noted defense counsel's objections on "fifth amendment grounds" and because counsel was unable to advise his client without knowing more about "what the questioning will involve[.]"  (Tr. 5-6.)  Counsel also expressed concern that any immunity granted in state court would not extend to federal prosecution.  During a break, the court allowed defense counsel and the prosecutor to confer regarding the line of questioning.  After resuming the hearing, the trial court indicated that it intended to grant Tunis immunity.  However, it remained unresolved whether he would in fact testify the next day.

[4]  On the day of trial, Tunis was sworn as a witness.  When asked to state his name, Tunis indicated he planned to invoke his constitutional privilege against self-incrimination by stating "I plead the fifth."  (Tr. 11.)  The prosecuting attorney then requested that the court grant Tunis use immunity and derivative

---

[1] In the information, Tunis was alleged to be a co-conspirator on the two conspiracy charges, but was not a co-defendant in the case.

[2] A copy of the summons is not included in the record on appeal, and it is unclear when Tunis was served.

use immunity under Indiana Code section 35-37-3-3.[3]  The trial court granted the prosecuting attorney's request and instructed Tunis in part

> . . . that any evidence that you give before this court . . . or evidence derived from the evidence may not be used in any criminal proceeding against you . . . .  You are further instructed that you must answer the questions asked that you would have been privileged to refuse to answer and produce those items requested that you would have been privileged to withhold but for this order pursuant to the privilege against self-incrimination.

(Tr. 12.)  Tunis then responded "I plead the fifth" to a direct question posed by the prosecuting attorney.  (Tr. 13.)  As a result, the court found Tunis in direct contempt of court and advised Tunis as follows:

> . . . I'm instructing my court reporter to reduce to writing the following information: that the court observes that witness Michael Tunis is refusing to testify and under Indiana code 34-47[-]2-2 (1), I am finding that he is refusing to testify in a trial proceeding.  I am further taking judicial notice of the hearing held yesterday regarding this exact matter and that the court observed that as Michael Tunis walked by defendant Clark, that Mr. Tunis looks down at Clark and gave a smile and a very slight nod to which the defendant responded and all of which the core [sic] interprets as a message that I will not testify or I will refuse this court's order.  These are the specific findings needed to be issued in a rule to show cause in [sic] I'm finding you in direct contempt of this court.  Mr. Tunis, I'm going to give you the

---

[3] The prosecutor presented written copies of the request and a proposed order to Tunis and the court, indicating she intended to file them that day.  The chronological case summary of cause F6-589 indicates both were filed on December 20.

> opportunity to purge yourself of contempt meaning escape
> contempt by agreeing to testify.

(Tr. 13.) After Tunis again declined to testify, the court sentenced him to one year in the Tippecanoe County Jail without credit time, consecutive to any and all other sentences.

On December 28, 2018, the trial court reduced its finding of contempt to a written order. The court also reconsidered and revised Tunis's sentence to 180 days executed in the Tippecanoe County Jail, without good time credit, to run consecutively to any other sentences imposed.

# Discussion and Decision

## Contempt

Contempt of court "is a *sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt." *State v. Heltzel*, 552 N.E.2d 31, 33 (Ind. 1990). "It is soundly within the discretion of the trial court to determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard." *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012). An abuse of discretion occurs "when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. Moreover, in reviewing direct contempt proceedings, we "accept as true the statement entered of record by the lower court of the

matter constituting the contempt," and "interfere with the judgment only where it clearly appears alleged acts do not constitute contemptuous acts." *In re Caito*, 459 N.E.2d 1179, 1182 (Ind. 1984), *reh'g denied*.

[7] "Direct contempt involves actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge." *Hopping v. State*, 637 N.E.2d 1294, 1296 (Ind. 1994), *cert. denied*. Any person who "is sworn to testify as a witness, in any trial or proceeding, in any court of record, and refuses to testify in the trial or proceeding . . . is considered guilty of a direct contempt of court." Ind. Code § 34-47-2-2(1). Though specified by statute, the power of courts to summarily punish for direct criminal contempt rests upon the common law and is inherent in the courts. *Hopping*, 637 N.E.2d at 1296. Ultimately,

> [c]ontempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Any* act related to a current or pending proceeding which tends to deter the court from the performance of its duties may support a contempt proceeding. *Any* act which manifests a disrespect and defiance of a court may constitute direct criminal contempt.

*Id*. at 1297 (citations omitted).

[8] Our constitutions protect persons accused of crimes from being compelled to testify against themselves. U.S. Const. amend. V; Ind. Const. art. 1, § 14; *In re S.H.*, 984 N.E.2d 630, 633 (Ind. 2013). However, the privilege against self-incrimination is not absolute. *In re Caito*, 459 N.E.2d at 1182. It "must be balanced against the government's legitimate demands to compel citizens to

testify so that, in order to effect justice, the truth surrounding the criminal incident may be discovered." *Id*.

[9]     Our legislature has empowered prosecutors to compel witnesses to testify, thus "tipping the scales in the government's favor." *In re S.H.*, 984 N.E.2d at 633 (citing I.C. §§ 35-37-3-1 *et seq*. (witness immunity in trials and hearings) and I.C. §§ 35-34-2-1 *et seq*. (grand jury and special grand jury proceedings)).

> To bring them back into balance, such compulsion must be accompanied by a grant of witness immunity "coextensive with the scope of the privilege." *In re Caito*, 459 N.E.2d at 1182. Critically, the immunity must place the witness "in substantially the same position as if he had properly exercised his privilege to remain silent." *Id*.

*Id*. As to types of witness immunity, our supreme court has explained:

> Three types of immunity may be granted a witness in exchange for his testimony: (1) *transactional immunity*: which prohibits the State from criminally prosecuting the witness for any transaction concerning that to which the witness testifies; (2) *use immunity*: where the testimony compelled of the witness may not be used at a subsequent criminal proceeding; and (3) *derivative use immunity*: whereby any evidence obtained as a result of the witness'[s] compelled testimony may not be admitted against him in a subsequent criminal prosecution.

*In re Caito*, 459 N.E.2d at 1182-83 (citing *Kastigar v. United States*, 406 U.S. 441 (1972); *In re Schultz*, 428 N.E.2d 1284 (Ind. Ct. App. 1981), *reh'g denied*). "[I]mmunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination" and "sufficient to compel testimony over a

claim of the privilege." *Kastigar*, 406 U.S. at 453. Thus, statutes that compel the testimony of target witnesses in exchange for both use immunity and derivative use immunity are constitutional. *In re Caito*, 459 N.E.2d. at 1183.

[10] Indiana Code chapter 35-37-3 governs witness immunity in a hearing or trial. Section 35-37-3-2 provides that "[i]f the court determines that the witness, based upon his privilege against self-incrimination, may properly refuse to answer a question or produce an item, the prosecuting attorney may make a written request that the court grant use immunity to the witness . . . ." Section 35-37-3-3 provides:

> (a) Upon request of the prosecuting attorney, the court shall grant use immunity to a witness. The court shall instruct the witness, by written order or in open court, that any evidence the witness gives, or evidence derived from that evidence, may not be used in any criminal proceeding against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney. The court shall instruct the witness that the witness must answer the questions asked and produce the items requested.
>
> [. . . .]
>
> (c) If a witness refuses to give the evidence after the witness has been granted use immunity, the court may find the witness in contempt.

The language of Indiana Code section 35-37-3-3(a) encompasses a grant of both use immunity and derivative use immunity. *See Wilson v. State*, 988 N.E.2d 1211, 1220 (Ind. Ct. App. 2013) (holding that the defendant was granted both

use immunity and derivative use immunity when the trial court granted immunity under Indiana Code section 35-37-3-3(a)).

[11] Under the statutes, if a witness in a trial invokes his privilege against self-incrimination and refuses to testify, the trial court shall, on the prosecuting attorney's request, grant the witness use immunity and derivative use immunity and instruct the witness accordingly. If the witness then refuses to testify, the court may find him in contempt. This is exactly what happened here. After Tunis invoked his privilege against self-incrimination, the trial court granted him use and derivative use immunity in accordance with the statute. The immunity granted was co-extensive with the scope of Tunis's right against self-incrimination. The court then instructed Tunis: "[Y]ou must answer the questions asked that you would have been privileged to refuse to answer and produce those items requested that you would have been privileged to withhold but for this order pursuant to the privilege against self-incrimination." (Tr. 12.) There is no doubt that Tunis's subsequent refusal to answer constitutes direct contempt of court.

[12] Nevertheless, Tunis argues that he was not in direct contempt of court because he reasonably relied on the advice of his counsel when he refused to testify. He claims that "[r]reliance on advice of counsel should not establish willful contempt." (Appellant's Br. 13.)

[13] First, it is unclear whether Tunis did rely on his counsel's advice. At the pre-trial hearing, counsel raised concerns and objections about (1) the scope of

immunity as it related to Tunis's Fifth Amendment rights; (2) the line of questioning the prosecuting attorney intended to pursue; and (3) the impact Tunis's testimony may have on potential federal criminal prosecution.[4] The general thrust of counsel's argument was that he did not have adequate time to thoroughly research these issues. But at trial the next day, Tunis did not indicate he was acting on the advice of counsel, and counsel was not present to renew these arguments.

[14] Yet even if Tunis relied on his counsel's advice, his argument that his conduct was not willful is unpersuasive. This Court has previously held that the trial court did not abuse its discretion in finding a witness in contempt when, acting explicitly on the advice of counsel, the witness asserted the right against self-incrimination and refused to testify in a deposition despite the trial court's grant of immunity under Indiana Code section 35-37-3-3. *Wilson*, 988 N.E.2d at 1221. Moreover, as our supreme court has observed, "[t]he trial court possesses unique knowledge of the parties before it and is in the best position to determine . . . whether a party's disobedience of the order was done willfully." *Witt*, 964 N.E.2d at 203. When finding Tunis in direct contempt, the trial court took judicial notice of Tunis's smile and nod to Clark at the pre-trial hearing, which

---

[4] The U.S. Supreme Court has adopted an exclusionary rule to protect state witnesses from prosecution under federal law, holding that "a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials in connection with a criminal prosecution against him." *Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 79 (1964), *overruled in part on other grounds by United States v. Balsys*, 524 U.S. 666 (1998).

the court "interpret[ed] as a message that I will not testify or I will refuse this court's order." (Tr. 13.) In reducing the order on contempt to writing, the court described Tunis's conduct as "further proof that his refusal to testify was intentional and firm." (App. Vol. II 6.) Based on the trial court's findings, Tunis's disobedience of the court's order to testify was undoubtably willful.

[15] Tunis next argues that we should reverse this court's finding of contempt because "he was not provided an opportunity pursuant to I.C. 34-47-2-4 to respond to the contempt finding." (Appellant's Br. 17.) We disagree. When entering an order on contempt, the statute directs the trial court to "distinctly state the act, words, signs, gestures, or other conduct of the defendant that is alleged to constitute the contempt" and reduce the statement to writing. I.C. § 34-47-2-4(b). Further:

> A statement described in subsection (b), shall be substantially set forth in the order of the court on the contempt, together with any statement made in explanation, extenuation, or denial of the contempt, which the defendant may make in response to the judge's statement.

I.C. § 34-47-2-4(c). Thus, the statute requires a court to include in the written order on contempt any statement by the defendant, *if* the defendant makes one.

[16] Here, Tunis was given the chance to respond to the court's contempt finding when the court provided him the opportunity to purge himself of contempt. Tunis made no explanation, extenuation, or denial, but responded: "I'm not going to testify, ma'am." (Tr. 13.) This was an adequate opportunity to make

any statement described in Indiana Code section 34-47-2-4. And the trial court properly reduced Tunis's response to writing when it found in its written order that "Tunis was given an opportunity to explain, testify and purge himself of contempt" and "again refused to testify in both words and in action by shaking his head in the negative." (App. Vol. II 6.)

[17] The trial court did not abuse its discretion in finding Tunis in direct contempt of court.

## Sentence

[18] Although the trial court initially sentenced Tunis to one year executed in the Tippecanoe County Jail, the court revised the sentence to 180 days when it entered the written order on contempt.[5] Tunis now argues that his 180-day sentence for direct contempt of court was inappropriate, chiefly because he was acting on counsel's advice. Based on the facts of *Skolnick v. State*, 388 N.E.2d 1156, 1161 (Ind. Ct. App. 1979), *trans. denied*, in which the trial court imposed a sentence of twenty-four hours incarceration for each instance of contumacious

---

[5] It is apparent that the trial court did not consider Tunis's refusal to testify a petty violation, but a more serious offense that merited an executed sentence of one year. Nevertheless, it appears the court on further reflection revised the sentence to 180 days, not because 180 days is the maximum sentence it could have levied for contempt of court, but because six months is the maximum a court may lawfully impose without the additional delay and expense associated with a jury trial. *See Holly v. State*, 681 N.E.2d 1176, 1177 (Ind. Ct. App. 1997) (holding that a trial court may sentence a person found to be in criminal contempt for up to six months imprisonment without guilt or innocence being determined by a jury). On appeal, Tunis does not challenge the lawfulness of his sentence, but asks us to review and revise it pursuant to Appellate Rule 7(B).

conduct, Tunis asks us to exercise our constitutional authority to revise his sentence to one twenty-four-hour period of jail time.

[19] Article 7, Section 6 of the Indiana Constitution grants this Court authority to independently review and revise a sentence imposed by the trial court. To implement this grant of authority, Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[20] In *Jones v. State*, 847 N.E.2d 190 (Ind. Ct. App. 2006), *trans. denied*, we discussed the standard for reviewing sentences imposed after a finding of contempt. As we noted there, it is unclear whether Appellate Rule 7(B)—which pertains to sentences "authorized by statute"—should apply in reviewing contempt sentences since the statute setting out the punishment for contempt was repealed in 1987. *Id*. at 201-02. We also observed that, since the statute's repeal, Indiana courts have reviewed sentences for contempt under both a "reasonableness" and "manifestly unreasonable" standard. *Id* at 202. As in *Jones*, we need not decide which test to apply, because whether we review Tunis's sentence under the inappropriate, manifestly unreasonable, or simple reasonableness standard, his sentence of 180 days does not warrant revision.

[21] Tunis's refusal to testify interfered with the prosecution of Clark for four felony offenses and undermined the trial court's authority. This was a serious act of

contempt. And, after reviewing cases involving similar instances of contempt, we conclude that a 180-day sentence is reasonable and not inappropriate. *See, e.g., In re Cudworth*, 815 N.E.2d 1019, 1023 (Ind Ct. App. 2004) (holding that defendant's six-month sentence was appropriate where the defendant refused to testify after a grant of immunity under Indiana Code section 35-37-3-3); *In re Gardner*, 713 N.E.2d 346, 348 (Ind. Ct. App. 1999) (sentence of three years for defendant's refusal to testify after the trial court's grant of use immunity was "proportioned to the nature of the offense of criminal contempt" and "adequate both to vindicate the authority of the trial court and to punish [the defendant] for his contempt"); *In re Steelman*, 648 N.E.2d 366, 369 (Ind. Ct. App. 1995) (sentence of one year was reasonable where defendant refused to testify after the trial court's grant of use and derivative use immunity).

# Conclusion

[22] The trial court did not abuse its discretion in finding Tunis in direct contempt of court. Tunis's 180-day sentence is reasonable and not inappropriate.

[23] Affirmed.

Riley, J., and Pyle, J., concur.