# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**RYAN D. BOWER**
Allen, Allen & Brown
Salem, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
May 31 2013, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTIE WILSON, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 88A01-1301-CR-2 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE WASHINGTON SUPERIOR COURT
The Honorable Frank Newkirk, Jr., Judge
Cause No. 88D01-1204-FB-256

**May 31, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Christie Wilson appeals the trial court's order finding her in contempt. Wilson raises one issue which we revise and restate as whether the trial court abused its discretion when it found her in contempt. On cross-appeal, the State argues that this court does not have jurisdiction and that this case is moot because Wilson did not timely appeal the trial court's order granting her immunity. We affirm.

FACTS AND PROCEDURAL HISTORY

On April 11, 2012, the State charged Nathan Schultz with two counts of burglary and eighteen counts of theft under cause number 88D01-1204-FB-256 ("Cause No. 256"). That same day, the State charged Wilson with burglary, theft, two counts of receiving stolen property, and being an habitual offender under cause number 88D01-1204-FB-257. On September 10, 2012, Wilson pled guilty to theft as a class D felony and receiving stolen property as a class D felony, and the other charges were dismissed. The court sentenced Wilson to three years for each offense and ordered that the sentences be served consecutive to each other for an aggregate sentence of six years.

In November 2012, the State filed a motion for grant of use immunity for Wilson in Cause No. 256.[1] On November 8, 2012, the court entered an Order Granting Use Immunity which states:

> The State of Indiana having filed the State's Grant of Use Immunity pursuant to Indiana Code 35-37-3-3, and the Court having reviewed the same, does now grant the witness, Christie Wilson, use immunity in connection with truthful testimony or statements given by her at deposition regarding the above-entitled cause. The Court instructs the witness that any evidence the witness gives, or evidence derived from that evidence, may not be used in a criminal proceeding against the witness, unless the

---

[1] The record does not contain a copy of this motion.

2

evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney. The Court instructs the witness that the witness must answer the questions asked and produce any items requested. The Court instructs the witness that a grant of use immunity does not prohibit the use of evidence the witness has given in a prosecution for perjury under I.C. 35-44-2-1. The Court further instructs the witness that, if the witness refuses to give the evidence after being granted use immunity, the Court may find the witness in contempt.

Appellant's Appendix at 6.

That same day, a deposition of Wilson occurred at which Wilson, her attorney, a deputy prosecutor, and Schultz's attorney were present. Wilson acknowledged that she had received a copy of the Order Granting Use Immunity. Wilson indicated that she would not be willing to answer questions, and her attorney stated that Wilson was willing to answer basic questions, but "as to anything involving any type of criminal activity or dealings with Mr. Schultz or otherwise, [Wilson] does intend to assert her Fifth Amendment of the U.S. Constitution and . . . rights as well as . . . Article 1, Section 14 of the Indiana Constitution, those rights to not self-incriminate." Id. at 9. Wilson's attorney also stated that they "take issue with the Order Granting Use Immunity as being . . . overly specific and not broad enough to actually provide the protections that those . . . constitutions provide." Id.

Schultz's counsel then asked Wilson some questions, and Wilson stated that she was currently residing at the Rockville Correctional Facility for receiving stolen property and aiding in a theft and that those charges were directly related to Schultz. However, Wilson asserted her rights under the Fifth Amendment when asked whether Schultz brought her property that led to her arrest for receiving stolen property. The prosecutor then asked Wilson some questions, and Wilson indicated that she understood that the

3

Order Granting Use Immunity provided that she would not be prosecuted for involvement in any crimes that she speaks about and that she could be found in contempt for refusing to answer. When asked why she did not want to testify, Wilson stated: "On advice of the counsel, I respectfully refuse to answer and hereby assert my rights under the 5th Amendment." Id. at 12.

On November 20, 2012, the State filed a Motion to Set Hearing on Contempt against Wilson. On November 30, 2012, the court held a hearing on the contempt allegation against Wilson, heard arguments, and found that Wilson was guilty of contempt. On December 5, 2012, the trial court entered an order regarding Wilson's contempt. The court notified Wilson that she may purge herself of the contempt by testifying truthfully in a deposition before 12:00 p.m. on December 14, 2012, and that if she did not purge herself of the contempt that she is ordered to serve "6 months (actual) at the Washington County Jail consecutive to any other sentence she is now ordered to serve." Id. at 16. On January 3, 2013, Wilson filed a notice of appeal from the December 5, 2012 order.

DISCUSSION

Wilson argues that she did not willfully violate the court's order, but merely asserted her Fifth Amendment rights. She asserts that the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution guarantee a defendant's right against self-incrimination. Wilson contends that "it appears to be a matter of first impression whether Indiana's Constitution section 14 provides greater protection than the U.S. Constitution's Fifth Amendment in matters relating to compelled

4

testimony through orders of use immunity. It is reasonable to find that Indiana's constitution may offer more protection." Appellant's Brief at 4. She further states that "Justice William Douglas, had vigorously dissented that a grant of immunity can rarely, if ever, be broad enough to eliminate all possibility that the testimony will in fact operate to incriminate a witness." Id. (citing Ullmann v. United States, 350 U.S. 422, 440 (1956) (Douglas, J., dissenting); Piccirillo v. New York, 400 U.S. 548 (1971) (Douglas, J., dissenting); Kastigar v. United States, 406 U.S. 441, 462 (1972) (Douglas, J., dissenting)). Wilson maintains that "[a] grant of immunity, especially a Use Immunity order is proper only when it is broad enough to eliminate all possibility that the testimony will in fact operate to incriminate her" and that if the State wishes to compel her testimony it should offer transactional immunity. Id. at 5. She states that "[a]lthough the U.S. Supreme Court has found that use immunity is sufficient protection, under the Indiana Constitution transactional immunity should be the only true protection." Id. at 7. Wilson also argues that her "refusal to testify was not 'disobedience of a court that undermines the court's authority, justice, and dignity.' As such, the maximum 180 day 'flat' contempt sentence is inappropriate." Id. at 7.

The State argues that Wilson attempts to challenge the non-jurisdictional merits of the trial court's November 8, 2012 order that she appear and testify at a deposition in Cause No. 256. The State asserts that Wilson forfeited her right to appeal the merits of the November 8, 2012 order because she did not appeal that order according to the Rules of Appellate Procedure. The State contends that "[s]ince Wilson does not challenge the trial court's finding that she is in contempt for failing to obey the November 8, 2012

5

order, there are no issues for this Court to review." Appellee's Brief at 6. The State further maintains that even if Wilson could challenge the November 8, 2012 order, she has failed to demonstrate the merits of her claim.

A.    Jurisdiction

We first address the State's argument that this court does not have jurisdiction and that this case is moot because Wilson did not timely appeal the trial court's November 8, 2012 Order Granting Use Immunity. The State cites City of Gary v. Major, 822 N.E.2d 165 (Ind. 2005); and Witt v. Jay Petroleum, Inc., 964 N.E.2d 198 (Ind. 2012), reh'g denied. In Major, the City of Gary appealed a trial court's finding of contempt and a corresponding award of monetary damages. 822 N.E.2d at 167. The Court held:

> The law in Indiana is well settled that a person cannot be held in contempt of court for failure to obey an order if the issuing court had no jurisdiction to give the order. Such an order is void and unenforceable. However, an order that is void because the court lacks jurisdiction to enter it is distinguished from an order that is otherwise invalid. Thus, "[a]lthough a defendant cannot be held in contempt of a void order, a defendant may be held in contempt of an erroneous order. . . . Accordingly, a defendant may not challenge a contempt finding based upon the prior order's non-jurisdictional irregularities. A party must follow an erroneous order. The only remedy from an erroneous order is appeal and disobedience thereto is contempt." Carson v. Ross, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987) (citations omitted), trans. denied; accord Crowl v. Berryhill, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997) ("A party's remedy for an erroneous order is appeal and disobedience of the order is contempt.").
>
> * * * * *
>
> Neither before the Court of Appeals nor before this Court has the City alleged the trial court lacked jurisdiction to enter its order of January 2001. At most, the order was erroneous. However, "[t]he only remedy from an erroneous order is appeal . . . ." Carson, 509 N.E.2d at 243.

6

Id. at 169-170 (citations and footnote omitted). The Court then emphasized that the City did not appeal the trial court's original order of January 17th, which declared null and void all towing contracts entered by the City Council and ordered the executive branch of the City of Gary to establish a procedure for the bidding and awarding of towing contracts, and held that "we are not presented with any question about the merits of the order or whether it was correct." Id. at 170. The Court observed that the "only issue is whether there was sufficient evidence before the trial court to demonstrate that the City was in willful disobedience of the trial court's order." Id.

In Witt, John Witt, HydroTech Corp., and attorney Mark Shere were held in contempt of court for violating the terms of a temporary restraining order. 964 N.E.2d at 200. On appeal, the appellants argued that the temporary restraining order "was issued 'under an incorrect legal standard' and that this 'moots' the finding of contempt for violating its terms." 964 N.E.2d at 203. The Court held:

> An order of the court is only unenforceable when the court lacked jurisdiction. If, in the valid exercise of its jurisdiction, a court issues an erroneous order, that order must be obeyed. Major, 822 N.E.2d at 169-70. "The only remedy from an erroneous order is appeal and disobedience thereto is contempt." Id. at 170 (quoting Carson v. Ross, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), trans. denied). Recognizing this, [the appellants] contend that the TRO and preliminary injunction are appealable as of right. See Ind. Appellate Rule 14(A)(5). A preliminary injunction is appealable as of right. A TRO is not. See id.; see also State ex rel. Bd. of Med. Registration & Examination v. Hayes, 228 Ind. 286, 288, 91 N.E.2d 913, 913 (1950) (stating that the granting or denial of a restraining order is not appealable). Regardless, such appeal must be filed "within thirty (30) days" after the entry of the order into the record. Ind. App. R. 14(A). This was not done. Because of procedural default, the validity of the TRO and preliminary injunction cannot be challenged in this appeal.

7

Id. (footnote omitted). The Court then addressed the appellants' arguments regarding whether the trial court abused its discretion in finding and punishing the contempt. Id. at 203-204.

In the present case, we observe that Wilson's notice of appeal indicated that she was appealing the December 5, 2012 order. Wilson phrases the issue as "whether or not the State of Indiana may compel testimony from [Wilson], who invokes the Federal and State Fifth Amendment privileges against compulsory self-incrimination." Appellant's Brief at 1. Under the statement of the case, Wilson states: "This is an appeal of the trial court's contempt finding, conviction and sentence of six months without 'good time' credit." Id. In the argument section of her brief, she states that she "was not willfully violating the court's order, but merely asserting a reasonable legal position," that her refusal to testify was not "disobedience of a court that undermines the court's authority, justice, and dignity," and that the sentence of 180 days was inappropriate. Id. at 7. While some of Wilson's arguments may to some extent raise the issue of the validity of the November 8, 2012 order, we cannot say that all of Wilson's arguments pertain only to the validity of that order. Consequently, we will address the merits of Wilson's argument to the extent that she contends that the trial court erred in finding that she was in contempt.

B.     Contempt

We now turn to whether the trial court abused its discretion when it found Wilson in contempt. Contempt is a "*sui generis* proceeding neither civil nor criminal in nature, although both of those labels are used to describe certain categories of contempt." State v. Heltzel, 552 N.E.2d 31, 33 (Ind. 1990). Contempt proceedings may be generally

8

categorized as civil or criminal, according to the nature and purpose of the sanction imposed. Jones v. State, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006), reh'g denied, trans. denied. A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. Id. As such, any type of penalty in a civil contempt proceeding must be coercive or remedial in nature. Id. By contrast, a criminal contempt is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. Id. Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party.[2] Id.

Contempt may also be direct or indirect. Jones, 847 N.E.2d at 199. Direct contempt involves action in the presence of the court, such that the court has personal knowledge of it. Id. Indirect contempt undermines the orders or activities of the court but involves action outside the trial court's personal knowledge. Id. Here, the parties agree that the alleged contempt is indirect because Wilson's failure to answer the questions at the deposition took place away from the courtroom and outside the personal knowledge of the trial court. See Ind. Code § 34-47-3-1 ("A person who is guilty of any willful disobedience of any process, or any order lawfully issued . . . by any court of record . . . is guilty of an indirect contempt of the court that issued the process or order.").

A party that is willfully disobedient to a court's order may be held in contempt of court. Witt, 964 N.E.2d at 202. It is soundly within the discretion of the trial court to

---

[2] Wilson concedes that "[t]he purported contempt in this case would, if it existed, likely be considered criminal contempt." Appellant's Brief at 3. The State argues that the remedial distinction between a civil and criminal contempt has no bearing on the appeal.

determine whether a party is in contempt, and we review the judgment under an abuse of discretion standard. Id. We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. Id. Contempt of court involves disobedience which undermines the court's authority, justice, and dignity. Id. The trial court has the inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. Id. Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. Id. "When a person fails to abide by a court's order, that person bears the burden of showing that the violation was not willful." Meyer v. Wolvos, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), reh'g denied, trans. denied. The determination of whether to find a party in contempt permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record. Witt, 964 N.E.2d at 202-203. The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its "authority, justice, and dignity" and whether a party's disobedience of the order was done willfully. Id.

The Indiana Supreme Court recently held that "[o]ur General Assembly has empowered prosecutors to compel witnesses to testify, tipping the scales in the government's favor." In re S.H., 984 N.E.2d 630, 633 (Ind. 2013) (citing Ind. Code §§ 35-37-3-1 et seq. (2008); 35-34-2-1 et seq. (2008)). "To bring them back into balance, such compulsion must be accompanied by a grant of witness immunity 'coextensive with the scope of the privilege.'" Id. (quoting In re Caito, 459 N.E.2d 1179, 1182 (Ind. 1984),

10

cert. denied, 469 U.S. 805, 105 S. Ct. 62 (1984), reh'g denied). "Critically, the immunity must place the witness 'in substantially the same position as if he had properly exercised his privilege to remain silent.'" Id. (quoting Caito, 459 N.E.2d at 1182).

Three types of immunity may be granted a witness in exchange for her testimony. Caito, 459 N.E.2d at 1182. Transactional immunity prohibits the State from criminally prosecuting the witness for any transaction concerning that to which the witness testifies. Id. at 1182-1183. Use immunity prohibits use at a subsequent criminal proceeding of testimony compelled of the witness. Id. at 1183. Derivative use immunity prohibits admission against a witness in a subsequent criminal prosecution of evidence obtained as a result of the witness's compelled testimony. Id.

"Conferring transactional immunity upon a witness is undoubtedly coextensive with his Fifth Amendment privilege since the compelled testimony can never be used against the witness in any criminal proceedings." Id. "This type of immunity grants the same degree of protection to a citizen ordered to testify as though he had not testified at all." Id.

The grant of use immunity alone cannot give a witness protection equivalent to the Fifth Amendment privilege. Id. The shortcoming of use immunity is that, although the compelled testimony cannot be admitted against the witness in a subsequent prosecution, other evidence derived from that testimony can. Id. Use immunity *per se* cannot protect an individual's right not to give evidence against herself because the compelled testimony may still be employed by investigators who have thereby gained a knowledge of the details of the crime and other sources of incriminating evidence. Id. Use immunity

11

cannot alone provide protection coextensive with the Fifth Amendment right because the witness would have done less damage to his defense through claiming the privilege, than by testifying with immunity. Id.

Ind. Code § 35-37-3-3(a) governs witness immunity and provides that "any evidence the witness gives, *or evidence derived from that evidence*, may not be used in any criminal proceeding against that witness . . . ." (Emphasis added).[3] The order granting Wilson immunity states in part:

> The Court instructs the witness that *any evidence the witness gives, or evidence derived from that evidence, may not be used in a criminal proceeding against the witness*, unless the evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney.

Appellant's Appendix at 6 (emphasis added). Based upon the language in Ind. Code § 35-37-3-3(a) and the trial court's order granting immunity, we conclude that Wilson was granted both use immunity and derivative use immunity.

The United States Supreme Court has decided that statutes which compel the testimony of target witnesses in exchange for both use immunity and derivative use immunity are constitutional even when they allow subsequent perjury prosecutions

---

[3] In its entirety, Ind. Code § 35-37-3-3 provides:

(a)     Upon request of the prosecuting attorney, the court shall grant use immunity to a witness. The court shall instruct the witness, by written order or in open court, that any evidence the witness gives, or evidence derived from that evidence, may not be used in any criminal proceeding against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the prosecuting attorney. The court shall instruct the witness that the witness must answer the questions asked and produce the items requested.

(b)     A grant of use immunity does not prohibit the use of evidence the witness has given in a prosecution for perjury under IC 35-44.1-2-1.

(c)     If a witness refuses to give the evidence after the witness has been granted use immunity, the court may find the witness in contempt.

arising from false immunized testimony. In re Caito, 459 N.E.2d at 1183 (citing Kastigar v. United States, 406 U.S. 441, 92 S. Ct. 1653 (1972)). In Kastigar, the United States Supreme Court stated:

> We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being ["]forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.['"] Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

406 U.S. at 453, 92 S. Ct. at 1661 (footnote omitted). The Court in Kastigar also held that "immunity from use and derivative use 'leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege' in the absence of a grant of immunity." Id. at 458-459, 92 S. Ct. at 1664 (quoting Murphy v. Waterfront Comm'n, 378 U.S. 52, 79, 84 S. Ct. 1594, 1609-1610 (1964)). Thus, we cannot say that the trial court abused its discretion in finding Wilson in contempt on the basis of the Fifth Amendment.

With respect to Wilson's argument that "under the Indiana Constitution transactional immunity should be the only true protection," we disagree. In Caito, the appellant had refused to testify claiming his privilege against self-incrimination under the Fifth Amendment as well as Article 1, Section 14 of the Indiana Constitution. 459

13

N.E.2d at 1181. On appeal, the Court mentioned "[o]ur constitutions," observed that the Court in Kastigar had held that statutes which compel testimony in exchange for both use immunity and derivative use immunity are constitutional, and concluded that Ind. Code § 35-34-2-8 did not violate the Fifth Amendment of the United States Constitution, nor Article 1, Section 14 of the Indiana Constitution.[4] Id. at 1182-1184. Based upon Caito, which was decided about twenty years ago, we cannot say that the Indiana Constitution requires transactional immunity or that the trial court's finding of contempt was an abuse of discretion.[5]

For the foregoing reasons, we affirm the trial court's finding of contempt.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

---

[4] At the time, Ind. Code § 35-34-2-8 provided in part: "Upon request by the prosecuting attorney, the court shall grant use immunity to a witness before the grand jury. The court shall instruct the witness by written order or in open court that any evidence the witness gives before the grand jury, or evidence derived from that evidence, may not be used in any criminal prosecution against that witness, unless the evidence is volunteered by the witness or is not responsive to a question by the grand jury or the prosecutor."

[5] Wilson mentions her sentence of 180 days in her brief. Specifically, Wilson states that her "refusal to testify was not 'disobedience of a court that undermines the court's authority, justice, and dignity.' As such, the maximum 180 day 'flat' contempt sentence is inappropriate." Appellant's Brief at 7. Because we conclude that the trial court did not abuse its discretion in finding Wilson in contempt, which involves disobedience of a court which undermines the court's authority, justice, and dignity, we do not find that Wilson's argument requires remand. To the extent that Wilson suggests that her sentence is otherwise inappropriate, we conclude that Wilson fails to develop the argument. Consequently, this issue is waived. See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).