# FOR PUBLICATION



**FILED**

Oct 11 2013, 5:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:
State of Indiana

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
A.S.

**STEVEN A. GUSTAFSON**
The Law Offices of Richard R. Fox
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF MENTAL HEALTH ACTIONS FOR A.S. | ) | |
| | ) | |
| | ) | No. 10A01-1211-MH-501 |
| SARA TOWNSEND, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1208-MH-124

**October 11, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Sara Townsend appeals a finding of indirect civil contempt against her issued by the Clark Circuit Court in conjunction with a mental health detention proceeding initiated by Townsend against A.S. Townsend presents the following restated issues for review:

1. Did the trial court err in finding Townsend in indirect civil contempt?

2. Did the trial court err in ordering Townsend to pay A.S.'s attorney and medical expenses?

We affirm in part, reverse in part, and remand.

The facts favorable to the judgment are that Townsend and A.S. were nurses and coworkers at Jewish Hospital in Louisville, Kentucky. A.S. was experiencing marital problems and the two spoke occasionally about those problems, as well as other stressful situations in A.S.'s life. On August 31, 2012, Townsend filed an Application For Emergency Detention (the Application) at the Lifespring Hospital, a mental health facility, seeking a seventy-two-hour emergency detention of A.S. on grounds that A.S. was dangerous and gravely disabled. On the Application, Townsend indicated that A.S. was dangerous to herself or others for the following reasons: "Distraught over marital troubles. Told friends & coworkers that she wanted to end it all. Carrying a loaded gun under seat of car. Made a list of people to take care of others when she's gone." *Appellant's Appendix* at 7. She also indicated that immediate emergency detention was necessary for the following reasons: "[W]ill harm himself/kill herself. Clinically depressed. Suicidal thoughts. Means to harm self. Refused to seek help voluntarily. Off her medicine (antidepressants)[.] Will not talk to her therapist." *Id*. This triggered emergency detention proceedings under Ind. Code Ann. § 12-26-5-1 (West, Westlaw current with all 2013 legislation). Pursuant to that provision, on

2

the strength of the Application, and without having met or evaluated A.S., Dr. Ahmad Ismail signed a "Physician Statement – Emergency Detention", recommending that A.S. be detained for seventy-two hours. *Id.* at 9-10. This document was presented to Judge Daniel E. Moore of the Clark Circuit Court. Based upon the representations in the physician statement, Judge Moore signed a document entitled, "Endorsement and Authorization by Judicial Officer Authorized to Issue Warrants for Arrest" (the detention warrant). *Appellee's Appendix* at 6-7. This detention warrant authorized police officers to arrest and detain A.S.

While these events were unfolding, A.S. was visiting a friend, Officer Tom Mitchell of the Jeffersonville Police Department. Mitchell was a patient at Floyd Memorial Hospital at the time. During her visit with Officer Mitchell, A.S. received a phone call from her husband informing her that police officers had arrived to take her into custody. She drove home immediately. A.S. knew one of the officers on the scene, Tom Higdon. Officer Higdon told her that everything would be okay. When they arrived at Wellstone Memorial Hospital (Wellstone), Officer Higdon stated to hospital personnel, "I highly doubt that they'll keep her. She doesn't need to be here. We know her[.]" *Transcript* at 152. A.S. was informed that she could not be discharged until she was examined and cleared by a physician. Because no physician was available, she was admitted.

On Saturday, Officer Mitchell telephoned Judge Moore and stated his opinion that there was nothing wrong with A.S. Officer Mitchell told the judge he believed "there was something wrong with the paperwork and that [A.S.] wasn't exhibiting any of the problem signs that would lend themselves to an emergency detention." *Appellee's Appendix* at 6.

Officer Mitchell asked the judge to look into the situation. This prompted Judge Moore to telephone Wellstone and inquire into the situation. He spoke with a nursing supervisor who also shared her own concerns and wondered why A.S. was detained. Judge Moore asked the supervisor to have the doctor making rounds that day call him. That doctor was psychiatrist Dr. Irfan Afaq. Dr. Afaq telephoned Judge Moore, who explained his concerns about A.S.'s detention. Dr. Afaq agreed to examine A.S. and report back to the judge. Dr. Afaq did this and informed the judge that he found "no clinical problems or symptoms that would indicate a mental illness condition … or disability." *Id.* at 15. Dr. Afaq suggested that A.S. remain at the facility for another twenty-four hours, after which she would be released if Dr. Afaq did not observe indicia of mental illness justifying continued detention throughout the Labor Day weekend. Judge Moore agreed. A.S. was released the next day when, following continued monitoring, the doctor "found no probable cause to believe that this patient meets the criteria for involuntary commitment." *Id.* at 9.

On September 21, 2012, on its own motion and after an independent investigation, the trial court issued a Citation and Order to Appear and Rule to Show Cause (the show-cause order) to Townsend. The show-cause order directed her to appear and show cause why she should not be held in contempt for "willfully hindering and delaying or disobeying lawful process of this court and directly making false and inaccurate statements to the Court, by way of her written and signed documents, pertaining to [A.S.] on, and around, the above dates, which require truthful and accurate statements in a commitment proceeding." *Appellant's Appendix* at 20-21. This was based upon the court's representation that it

4

received information … questioning the allegations and reasons that led to an Emergency Detention Order pertaining to [A.S.]. The Court then spoke with medical professionals at Wellstone Regional Hospital. On the same date the Court was contacted by a Jeffersonville Police Department Officer, tendering information and facts that raise concerns and questions as to the necessity and reasons offered in support of the Emergency Detention Order granted against [A.S.].

*Id.* at 19. The court also ordered A.S. to appear at the hearing. On October 5, 2012, Townsend filed a motion to dismiss, arguing there was not sufficient evidence to support the show-cause order, that she had immunity pursuant to I.C. § 12-26-2-6 (West, Westlaw current with all 2013 legislation), and that a show-cause order was not an appropriate remedy for A.S. The trial court denied that motion and, following a hearing, found Townsend in indirect civil contempt of court under Ind. Code Ann. § 34-47-3-2 (West, Westlaw current with all 2013 legislation). The court ordered Townsend to pay: (1) A.S.'s uninsured hospital bills resulting from the detention; (2) $500 to Wellstone; and (3) $1000 toward whatever attorney fees A.S. incurred as a result of the contempt hearing. The court also ordered Townsend to write a letter of apology to Wellstone, and to write a letter of apology to A.S.

Finally, we note that Townsend filed her notice of appeal on November 9, 2012, serving notice thereof on A.S. Eight days after filing her notice of appeal, Townsend served all filings in the case upon the State. After receiving these materials, the State filed a Notice of Non-Involvement, informing this court that the State's interests were not involved and declining to participate. Upon appeal, A.S. contended the State was a necessary party because the matter under appeal was a sua sponte order issued by a trial court in connection with an involuntary commitment proceeding, which represented an action undertaken by the

5

trial court to protect the integrity of the judicial system.

At the time Townsend filed her notice of appeal, A.S. had appeared in this action only because she was ordered to do so by the Clark Circuit Court in conjunction with the contempt hearing. At that point, A.S. had filed no motions in connection with these proceedings. As A.S. notes in her appellate brief, she "has no personal stake in defending the State's action here, and appears only to argue that her award of attorney fees and expenses be affirmed." *Appellee's Brief* at 15. We concluded that the State's interests are sufficiently involved such that it should offer argument concerning the trial court's order. We therefore ordered the State to file an appellate brief responding to Townsend's Appellant's Brief. Having received and considered the State's brief, we proceed to resolve the issues presented in this appeal.[1]

1.

Townsend contends the trial court erred in finding her in indirect civil contempt.

> When reviewing a finding of contempt, we accept as true the statement entered by the trial court. This Court will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts. Contemptuous acts are those in opposition to a court's authority, justice, and dignity. Any act related to a current or pending proceeding that tends to deter the court from the performance of its duties may support a finding of contempt.

*Bellamy v. State*, 952 N.E.2d 263, 266 (Ind. Ct. App. 2011) *trans. denied,* 962 N.E.2d 647 (Ind. 2011) (quoting *In re Nasser,* 644 N.E.2d 93, 95 (Ind. 1994)) (internal citations to

---

[1] We note the Attorney General continues to argue that the State has no dog in this fight. Indeed, the Attorney General argues with notable conviction that this court erred in ordering it to file a brief on behalf of the trial court's order. Although we disagree with the State's claim that its interests are not implicated and that there is no authority to order the Attorney General to participate in this case, we will leave discussion of that issue for another day. For our purposes, it is enough to note that the State offered a brief argument in support of Townsend's position with respect to the contempt finding. The State opted not to address the second issue, i.e., whether the sanctions should be affirmed.

6

authority omitted).

Generally, contempt proceedings may be categorized as civil or criminal. *Wilson v. State*, 988 N.E.2d 1211 (Ind. Ct. App. 2013). Criminal contempt is an act that obstructs the administration of justice, is directed against the dignity and authority of the court, or tends to bring the court into disrepute. *Id.* As a result, a sanction for criminal contempt is punitive in nature because its purpose is to vindicate the authority of the court; it benefits the State rather than the aggrieved party. *Id.* On the other hand, civil contempt is a violation of a court order, which results in a proceeding for the benefit of the aggrieved party. *Id.* Accordingly, the penalty in a civil-contempt proceeding must be coercive or remedial in nature. *Id.* Contempt may also be classified as direct or indirect. *Id.* Direct contempt involves action in the court's presence, such that the court has personal knowledge of it. *Id.* On the other hand, indirect contempt involves action outside the trial court's personal knowledge that undermines the court's orders or activities. *Id.*

The trial court found Townsend to be in indirect civil contempt of court because she submitted false statements in order to obtain a court order authorizing detention of A.S. As the trial court phrased it, "Townsend's actions hindered and delayed the lawful execution of a Court Order in that she used false statements to obtain such Order." *Appellee's Appendix* at 20. Although we understand the point the trial court was expressing, we believe it mischaracterized the causal relationship between Townsend's action and the court's order. The court's language conveys the idea that an order existed at the time Townsend submitted the perjurious affidavit, and therefore that the affidavit postdated the order. In point of fact,

7

however, the perjurious Application completed by Townsend *caused* the issuance of the detention warrant – the warrant did not pre-date the perjury. Ind. Code Ann. § 34-47-3-1 (West, Westlaw current with all 2013 legislation) provides:

> *A person who is guilty of any willful disobedience of any process, or any order lawfully issued*:
>
> (1) by any court of record, or by the proper officer of the court;
> (2) under the authority of law, or the direction of the court; and
> (3*) after the process or order has been served upon the person*;
> is guilty of an indirect contempt of the court that issued the process or order.

(Emphasis supplied.) Clearly, this provision contemplates that the order upon which a civil contempt finding is based must predate the contemnor's offending action. Therefore, we conclude that a finding of civil contempt under I.C. § 34-47-3-1 must be premised upon an action that disobeys or in some other way impedes or is inconsistent with an existing court order or action. *See*, *e.g.*, *In re Guardianship of C.M.W.*, 755 N.E.2d 644, 650 (Ind. Ct. App. 2001) ("Grandfather did not fail to conform to a court order issued for Mother's benefit. Indeed, the trial court had not issued any orders beyond the granting of the temporary guardianship at the time. Thus, the trial court abused its discretion in finding Grandfather in civil contempt"). The detention warrant did not exist at the time Townsend completed the Application. In the absence of a court order or directive, there can be no disobedience thereof, which is the gravamen of a civil-contempt finding.

As noted previously, direct criminal contempt involves actions within the judge's personal knowledge that interfere with the business of the court. *See In re Guardianship of C.M.W.*, 755 N.E.2d 644. Any act that "manifests a disrespect and defiance of a court" may

8

justify a finding of direct criminal contempt. *Id.* at 650. In the present case, the court essentially found that Townsend lied to the court in completing the Application, for the purpose of inducing the court to issue a groundless warrant. It follows from the foregoing discussion that this matter should have been pursued as an action for criminal contempt and tried accordingly. Therefore, the trial court erred in finding Townsend in indirect civil contempt. That judgment must be reversed. Upon remand, the State may decide whether to pursue a charge of direct criminal contempt. *Cf. La Grange v. State*, 238 Ind. 689, 697, 153 N.E.2d 593, 598 (1958) (the court decided that the appellant's conviction of direct contempt "should have been treated as an action for indirect contempt and tried accordingly. This was not done in the instant case. Therefore, judgment must be reversed and a new trial ordered").

2.

Having determined that the finding of indirect civil contempt must be reversed, we must now determine whether the order directing Townsend to pay A.S.'s and Wellstone's expenses can stand. A.S. contends that the order to pay the expenses she incurred as a result of the false information provided by Townsend on the Application was a legitimate exercise of the court's power to sanction unseemly behavior.

Our Supreme Court discussed this sanctioning power extensively in *Noble Cnty. v. Rogers*, 745 N.E.2d 194 (Ind. 2001). In that case, Noble County issued a stop-work order to a homeowner who was adding a second story to her home. The county did so on the basis that the homeowner had failed to obtain a building permit. When the homeowner continued construction, the county obtained a temporary restraining order, forbidding the homeowner

from further construction. The homeowner appealed the temporary restraining order and the Court of Appeals reversed, holding that the applicable codes amounted to "building codes", not "housing codes". As such, building codes did not apply to private homes and could not serve as a basis for the stop-work order or the temporary restraining order. Upon remand, the homeowner asserted that she was entitled to damages, including compensation for the cost of finding another place to live while the temporary restraining order was in place, as well as for damages to the house caused by exposure to the elements during the cessation of construction.

Ultimately, the case made its way to our Supreme Court, which addressed the question of whether the costs the homeowner sought were recoverable under Indiana Trial Rule 65(C), which pertains to temporary restraining orders. The Court took the occasion to discuss the sanctioning power of the courts. It clarified that "[n]o statutory sanction is needed" to exercise a court's inherent power to enforce compliance with its orders and decrees, to protect the proper functioning of judicial proceedings, and "to sanction litigants for improper or untoward behavior in judicial proceedings." *Id*. at 197.

In *Allied Prop. & Cas. Ins. Co. v. Good*, 919 N.E.2d 144 (Ind. Ct. App. 2009), *trans. denied*, this court addressed the question of whether our courts possess the inherent power to sanction parties and attorneys for violating orders in limine and causing mistrials. In *Allied*, a husband and wife's home and its contents were damaged by a fire. The wife submitted a claim to Allied, which had issued a homeowners insurance policy to cover that property. When Allied refused to act on wife's claim, she filed a complaint in Wabash Circuit Court.

10

Allied asserted an affirmative defense of common-law arson, as well as application fraud, and other contractual defenses based upon the insurance policy's intentional act and fraud exclusions. The matter ultimately proceeded to a bifurcated trial.

The trial court had issued pretrial orders in limine concerning husband's prior convictions and previous fires at the home. When one of Allied's witnesses violated this order, the trial court admonished counsel that any future violations might result in a mistrial and a finding of contempt. Shortly thereafter, another Allied witness mentioned husband's prior convictions. Following an objection, the trial court excused the jury and asked counsel why he should not be held in contempt. Counsel responded that he had conferred with the witness as the jury was leaving, and the witness confirmed she had been instructed not to bring up that matter but had forgotten. After further discussion and deliberation, the court declared a mistrial and ordered Allied to pay the fees associated with wife's costs incurred as a result of the now aborted trial. Allied appealed that ruling, arguing that such sanctions were not permitted for the violation of a motion in limine.

We noted that a trial court's inherent power to issue reasonable sanctions is incident to its interest in "maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior." *Id*. at 152 (quoting *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005)). Although the scope of this inherent power has been discussed in the foregoing cases, among many others, its parameters have never been clearly delineated. Nor, it seems, could they be. This power is premised upon and vital to the very independence of the judiciary and thus must be flexible

11

enough to address the great variety of situations that confront our courts. *See Noble Cnty. v. Rogers*, 745 N.E.2d 194; *see also Allied Prop. & Cas. Ins. Co. v. Good*, 919 N.E.2d at 153 ("[a]s old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments") (quoting *Shepherd v. Am. Broad. Co., Inc.,* 62 F.3d 1469, 1472 (D.C. Cir. 1995)). Nevertheless, courts must use restraint in the use of inherent powers, "because of their very potency." *Id.* (quoting *Shepherd v. Am. Broad. Co., Inc.,* 62 F.3d at 1475). We review a trial court's use of its sanctioning power for an abuse of discretion. *Allied Prop. & Cas. Ins. Co. v. Good*, 919 N.E.2d 144.

We conclude that the order to reimburse A.S. and Wellstone was not improper. As we have indicated, these powers are properly exercised where they are necessary to protect the court's integrity and guard against abuses of judicial process. In the present case, the court determined that Townsend filed a document containing what she knew to be false information, which she knew in turn would engage the judicial machinery and trigger the issuance of a groundless detention order. This resulted in a needless expenditure of the court's time and effort, not only in issuing the order but also in investigating A.S.'s actions and conducting remedial proceedings. All of this was to the detriment of the court's integrity. Townsend's actions also had significant detrimental effects upon A.S., financially and otherwise. Appropriately, the sanctions imposed against Townsend were compensatory in nature to reimburse A.S. and her attorney for costs incurred as a direct result of

12

Townsend's falsified Application. *See id.*

Finally, we note as an aside that before a trial court may impose sanctions in this manner, the party or attorney that is the subject of the sanctions is entitled to due process, which includes notice and the opportunity to be heard. *Id.* "These minimal procedural requirements give the party … an opportunity to argue that its actions were acceptable, present mitigating circumstances, or apologize to the court for its conduct." *Id.* at 156. In the present case, notwithstanding that the order issued from a contempt hearing, Townsend had notice of the allegations of misconduct against her and was given an opportunity to be heard on those matters, including presenting evidence on her behalf. Thus, Townsend was afforded adequate due process.

In conclusion, this trial court erred in finding Townsend to be in indirect civil contempt of court because the deceptive actions upon which the ruling was based were undertaken in the absence of a court order and thus cannot be regarded as an act of disobedience. The actions that caused the trial court to issue its order for rule to show cause form the basis for a charge of criminal contempt, not civil contempt. We leave it for the State to decide whether to file such charges upon remand. Finally, we affirm the order directing Townsend to pay A.S's uninsured medical expenses and $1000 toward her attorney fees, as well as to pay $500 to Wellstone, because such was a legitimate exercise of the court's inherent power to impose sanctions.

Judgment affirmed in part, reversed in part, and remanded.

BAKER, J., and VAIDIK, J., concur.