**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Oct 10 2014, 9:51 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LAURA FAULKENBURG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1405-CR-211 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
Cause No. 22D01-1402-MC-272

**October 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Ronald Graham, the father of Laura Faulkenburg's child, was charged with resisting law enforcement and criminal recklessness after he crashed a car and fled the scene. At trial, the State presented evidence that Faulkenburg was a passenger in Graham's car and called her as a witness. Faulkenburg asserted her Fifth Amendment privilege against self-incrimination and refused to testify. The State did not grant her immunity but agreed to limit its inquiry to the nature of her relationship with Graham; whether he was in the car with her; and whether Graham was the driver of the car. Faulkenburg answered the first question but refused to answer the other two. The trial court held a hearing, found Faulkenburg in direct criminal contempt for her refusal to answer, and sentenced her to one year in jail.

On appeal, Faulkenburg contends that the trial court erred in finding her in contempt because answering those questions would furnish a link in the chain of evidence that could lead to her prosecution for being an accomplice to or a conspirator in Graham's crimes. We agree and therefore reverse the trial court's contempt ruling. Faulkenburg also contends, and the State concedes, that the trial court violated the Sixth Amendment in sentencing her to more than six months. Because we reverse the contempt ruling, however, we do not reach that issue.

**Facts and Procedural History**

The trial court's contempt order reads in pertinent part as follows:

> This case originated in the criminal jury trial of State of Indiana v. Ronald F. Graham, Cause No. 22D01-1309-FD-1827. Mr. Graham was charged with one count of Resisting Law Enforcement and one count of Criminal Recklessness. The Court FINDS as FOLLOWS:

1. On February 26, 2014, the trial of State of Indiana v. Ronald F. Graham resumed. The State of Indiana called, as its second witness, Laura R. Faulkenburg.

2. A contested trial issue was the identity of the driver of the automobile.

3. The evidence at trial, given by Police Officer Jason Jones, revealed Ms. Faulkenburg was a passenger in the car and had identified Mr. Graham as the driver.

4. The State called Ms. Faulkenburg as a corroborating witness.

5. Ms. Faulkenburg, a defendant in an unrelated case, was accompanied by her court-appointed attorney, Mr. George Streib.

6. Outside the presence of the jury, Mr. Streib advised Ms. Faulkenburg to assert her Fifth Amendment Right to not testify.

7. The State explained she had not been charged in this case, that she was a mere passenger in the car and was ultimately injured when the car went airborne and crashed. Ms. Faulkenburg was trapped in the wrecked automobile while the driver fled from the scene. The State further stated there were no grounds or intention of charging Ms. Faulkenburg with any crime stemming from this case.

8. The State agreed to limit its questioning and put on the record the three questions Ms. Faulkenburg would be asked;

    a. What is your relationship with Ronald Graham?

    b. Was Ronald Graham in the car with you?

    c. Was Ronald Graham the driver of the car?

9. The Court made a determination that the questions to be asked and the responses to be given were the same Ms. Faulkenburg had already given to the police and did not expose her to jeopardy or criminal peril or rise to a level of a Fifth Amendment privilege. The Court advised her that she must answer the questions.

3

10. Absent a claim of privilege, a witness' refusal to testify constitutes contempt.

11. While Ms. Faulkenburg's counsel maintained that any testimony could potentially prove to be incriminating, he explained to her the ramifications of not testifying and that she could be held in contempt and the possible penalty for contempt.

12. The Court advised Ms. Faulkenburg the same and she stated she understood.

13. The jury was brought into the courtroom and examination of Ms. Faulkenburg began.

14. After answering the State's questions regarding her name and her relationship with Mr. Graham, Ms. Faulkenburg stated she did not want to answer any additional questions.

15. The Court ordered her to answer, she again refused.

16. The jury was again sent back to the jury room.

17. The Court set the matter for a Direct Contempt Hearing on February 27, 2014 where Ms. Faulkenburg was given the opportunity to explain or justify her refusal to testify.

18. Ms. Faulkenburg's refusal to answer additional questions impeded the State's presentation of its case as well as the Defendant's defense of identity.

19. Her refusal to answer additional questions was in defiance of the Court and, because no privilege exists, is contrary to law as well as against the dignity of the Court.

After review of the arguments of counsel, testimony at trial, applicable statutes, and being duly advised, the Court FINDS proof beyond a reasonable doubt and enters judgment of GUILT OF DIRECT CONTEMPT and sentences Laura R. Faulkenburg to one (1) year in the Floyd County Jail.

Appellant's App. at 3-5.

Faulkenburg filed a motion to correct error, which was deemed denied, and this appeal followed.

## Discussion and Decision

Faulkenburg contends that the trial court erred in finding her in contempt for refusing to answer questions at Graham's trial. "Contempt of court involves disobedience which undermines the court's authority, justice, and dignity. The trial court has the inherent power to maintain its dignity, secure obedience to its process and rules, rebuke interference with the conduct of business, and punish unseemly behavior." *Wilson v. State*, 988 N.E.2d 1211, 1218-19 (Ind. Ct. App. 2013) (citation omitted).[1] "The trial court enjoys discretion in determining whether a party is in contempt of court, and its decision will be reversed only for an abuse of discretion." *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind. Ct. App. 2007).[2] "A court will be deemed to have abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.* We neither reweigh evidence nor judge witness credibility. *Id.* "We will affirm unless, after a review of

---

[1] A person who is sworn to testify as a witness at trial and refuses to testify is considered guilty of a direct contempt of court. Ind. Code § 34-47-2-2. "Contempt proceedings may be generally categorized as civil or criminal, according to the nature and purpose of the sanction imposed." *Wilson*, 988 N.E.2d at 1218. A criminal contempt, at issue here,

> is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party.

*Id.* (citation omitted).

[2] We remind Faulkenburg's counsel that the argument section of an appellant's brief "must include for each issue a concise statement of the standard of review[.]" Ind. Appellate Rule 46(A)(8)(b).

the entire record, we have a firm and definite belief that a mistake has been made by the trial court." *Id*.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself[.]" "The Fifth Amendment protection against self-incrimination is applicable in any proceeding, whether civil or criminal, administrative or judicial, investigatory or adjudicatory." *In re Kefalidis*, 714 N.E.2d 243, 245 (Ind. Ct. App. 1999).

> A trial court is authorized to determine whether an answer to a question proposed to a witness will incriminate the witness. However, in determining whether the answer might have that effect, the court is bound by the statement of the witness "unless it clearly appears from the examination and the circumstances before the court that the witness is mistaken in his conclusion that the answer will incriminate him, or that the witness' refusal is purely contumacious."

*Id*. (quoting *Northside Sanitary Landfill, Inc. v. Bradley*, 462 N.E.2d 1321, 1325 (Ind. Ct. App. 1984)).

"The scope of the Fifth Amendment right against self-incrimination is not limited to testimony which might lead directly to a criminal conviction." *Id*. at 246. "It also includes evidence which would 'furnish a link in the chain of evidence that could lead to prosecution,' and evidence which a witness '*reasonably believes* could be used against him in a criminal prosecution.'" *Id*. (quoting *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). "The witness is under no obligation to explain how the answer might tend to incriminate him as this would defeat the very object of the constitutional provision." *Id*. at 245.

> However, a witness is not exonerated from answering because he judges that in doing so, he would incriminate himself; that is, "his say-so does not of

6

itself establish the hazard of incrimination". *Hoffman v. United States*, [341 U.S. 479, 486 (1950)]. The trial judge in appraising the claim "must be governed as much by his personal perception of peculiarities of the case as by the facts actually in evidence". [*Id*. at 487] (citation omitted).

*Bradley*, 462 N.E.2d at 1326.

"[A] trial court is to defer to a defendant's claim of privilege unless the trial judge determines it is '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Kefalidis*, 714 N.E.2d at 245-46 (quoting *Hoffman*, 341 U.S. at 488) (emphases in *Hoffman*). The right to assert the privilege against self-incrimination "does not depend on the *likelihood*, but on the *possibility* of prosecution[.]" *Id*. at 246 (citing *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 872 (7th Cir. 1979)). "A risk of prosecution which is 'more than fanciful' is sufficient to sustain the assertion of the privilege." *Id*. (quoting *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1151 (7th Cir .1981), *aff'd* 459 U.S. 248 (1983)).

"The privilege against self-incrimination is one of the most fundamental of our constitutional rights and has been jealously guarded by the judiciary." *In re Caito*, 459 N.E.2d 1179, 1182 (Ind. 1984). "However, the privilege is not absolute, but must be balanced against the government's legitimate demands to compel citizens to testify so that, in order to effect justice, the truth surrounding the criminal incident may be discovered." *Id*. "The balance between the imperatives of the privilege and the government's interest is achieved by granting witness immunity to those who are forced to testify against themselves." *Id*. "Critically, the immunity must place the witness 'in substantially the same

position as if he had properly exercised his privilege to remain silent.'" *In re S.H.*, 984 N.E.2d 630, 633 (Ind. 2013) (quoting *Caito*, 459 N.E.2d at 1182).

As stated above, the two questions that Faulkenburg refused to answer at Graham's trial were (1) whether Graham was in the car with her and (2) whether he was driving the car. Faulkenburg contends that it was "certainly not *perfectly clear* that [her] answers to these questions would not incriminate her." Appellant's Br. at 8. She further contends that "it is entirely possible that [she] urged Graham to flee, making her a possible accessory to resisting or guilty of conspiracy to resist law enforcement. Thus, if [she] answered the State's question regarding whether she was in the vehicle with Graham, her answer would have been incriminatory." *Id.* (citation to contempt hearing transcript omitted).[3] She points out that she "was involved in the crime of resisting law enforcement" and asserts that "[h]er involvement in this crime presents, at the very least, the possibility that her answers could be incriminatory." *Id.* at 9. Finally, she contends that without an offer of immunity she "had every right to refuse to answer the State's questions." *Id.*

The State responds,

Although [Faulkenburg] suggests she could have been guilty as an accomplice or a co-conspirator if she encouraged Graham to flee, she was not being asked any questions about whether she said anything to Graham or what she was doing while they were fleeing so there was no possibility that any such hypothetical information would be elicited by these questions. And, again, the trial court found that there was nothing in the investigation that would support

---

[3] The State complains that Faulkenburg "has not provided this Court with any of the Record from the Graham case" and asserts that "[t]hus, the Court has no basis from which it could second-guess the trial court's determination that 'there was no evidence in either the evidence at trial, the probable cause affidavit or the police investigation' to support the supposition that [Faulkenburg] might imperil herself by answering these two limited questions." Appellee's Br. at 8 n.3. On the contrary, the undisputed facts found by the trial court provide a sufficient basis to review (not second-guess) its ruling.

that supposition. Testifying that Graham was the driver would not provide a chain in a link of evidence proving that [Faulkenburg] was an accomplice to his crimes. Given the lack of any evidence that [Faulkenburg] had encouraged Graham in his flight, there was no risk that her testimony that she was in the car with Graham could subject her to the risk of prosecution as an accomplice unless she voluntarily disclosed information that was not responsive to these two questions.

Appellee's Br. at 9 (footnote omitted).[4]

We disagree. Faulkenburg refused to divulge whether she was in the car with Graham and whether he was the driver precisely to avoid providing evidence that she was an accomplice to or a conspirator in Graham's crimes. Answering those questions would furnish a link in the chain of evidence that could lead to her prosecution. The risk of prosecution here is "more than fanciful," especially given Faulkenburg's probation status[5] and the State's failure to grant her immunity for her testimony at Graham's trial. The fact that Faulkenburg had previously identified Graham as the driver is irrelevant, as is the fact that the State presented evidence that she was in the car with him. There is no indication that her statements to the police were made under oath and no guarantee that they would be consistent with her trial testimony. And one's Fifth Amendment privilege against self-incrimination does not evaporate simply because evidence tending to show one's innocence has already been presented at trial.

---

[4] In the footnote, the State says that Faulkenburg's "assertion that she was 'involved in the crime of resisting law enforcement' is not supported by the record. Mere presence at the time a crime is committed does not make a person involved in the crime." Appellee's Br. at 9 n.4 (quoting Appellant's Br. at 9). The State ignores the possibility raised by Faulkenburg that she encouraged Graham to flee from police.

[5] At the contempt hearing, Faulkenburg's counsel stated that Faulkenburg was currently being held on a probation violation. Tr. at 6-7.

In sum, we conclude that the trial court abused its discretion in finding Faulkenburg in contempt and therefore reverse that ruling. Consequently, we need not address Faulkenburg's argument, with which the State agrees, that the trial court violated the Sixth Amendment in sentencing her to more than six months in jail. *See, e.g.*, *Holly v. State*, 681 N.E.2d 1176, 1177-78 (Ind. Ct. App. 1997) ("[S]entences up to six months may be imposed for criminal contempts without guilt or innocence being determined by a jury. Sentences exceeding six months may not be imposed absent a jury trial or waiver thereof.") (citation omitted).

Reversed.

MATHIAS, J., concurs.

RILEY, J., concurs in part and dissents in part with opinion.

'

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

LAURA FAULKENBURG,          )
                                      )
      Appellant-Defendant,      )
                                      )
             vs.                )      No. 22A01-1405-CR-211
                                      )
STATE OF INDIANA,             )
                                      )
      Appellee-Plaintiff.        )

---

**RILEY, Judge, concurring in part and dissenting in part**

I respectfully concur in part and dissent in part. While I agree with the majority that the trial court improperly sentenced Faulkenburg to a term exceeding six months, I find that the contempt finding was justified.

I disagree with Faulkenburg's unsupported theory that had she testified that Graham was the driver, she would have been subject to prosecution as an accomplice. After Faulkenburg asserted her Fifth Amendment privilege, the trial court evaluated her assertion. The record shows that the trial court carefully considered all circumstances before it, and it found that Faulkenburg was mistaken in her belief that her responses to the questions would possibly incriminated her. *See In re Kefalidis*, 714 N.E.2d at 245. Faulkenburg makes the assertion that it was "entirely possible that [she] urged Graham to flee [thus] making her an

accessory to resisting [] law enforcement." (Appellant's Br. p. 8). The State counters Faulkenburg's argument by stating that such "hypothetical information" would not have been elicited by the questions asked. (Appellee's Br. p. 9). I agree. Nothing on the record supports Faulkenburg's supposition. Even if it were on the record, her claim fails because the questions asked were limited to whether Graham was in the car with her and whether Graham was driving the vehicle. Moreover, Faulkenburg had previously been asked similar questions by the police and had responded to them. Even though Faulkenburg had been given immunity which in this case, she was not, the trial court had prior knowledge that Faulkenburg had answered to similar questions, yet, she had not been charged as an accomplice.

That said, I find that it was obviously clear that Faulkenburg was mistaken as to the self-incriminating nature of the answers when she invoked her Fifth Amendment right. *See In re Kefalidis*, 714 N.E.2d at 245. There was no reason for Faulkenburg to think that her response to the remaining two questions would have provided evidence implicating her in the crime of criminal recklessness or resisting law enforcement. Therefore, her refusal to testify was purely contumacious and the trial court did not abuse its discretion in finding Faulkenburg in direct criminal contempt. Because the contempt finding was justified, I would affirm the trial court's finding.